UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BETTY JONES JAMES                                   CIVIL ACTION

versus                                              NO. 06-5836

COUNTRYWIDE HOME LOANS,                             SECTION: E/3
INC., et al

### RULING ON MOTION FOR SUMMARY JUDGMENT

This matter is before the court on two motions for summary judgment filed by defendants Countrywide Home Loans, Inc. ("Countrywide"), r.d. #60, and Beal Bank, S.S.B. ("Beal"), r.d. #62. Plaintiff Betty Jones James[1] ("James") opposes the motions. The motions were considered on the briefs without oral argument, and the court is now prepared to rule.

### BACKGROUND

In 1991, James took out a mortgage on property that she owned located at 3000-3002 St. Peter Street in New Orleans.[2] Over the intervening years, the mortgage was assigned to and serviced through several mortgage companies, and the property was covered by homeowner's and flood insurance with the premiums always paid by the mortgagee from an escrow account maintained for that purpose. For the period at issue here, defendant

---

[1] There appears to be some confusion as to the plaintiff's name. While some of the exhibits (insurance documents/correspondence) identify her as Betty J. Jones, the Court will refer to her as Betty Jones James, as she is identified in the pleadings.

[2] The recited facts are taken from James' Supplemental and Amending Complaint, r.d. #40.

Louisiana Citizens Property Insurance Corporation[3] ("Citizens") provided the homeowner's insurance, plaintiff's insurance agency was defendant Oxford Insurance Agency, Inc., ("Oxford"). The mortgage was serviced by Beal from October 2001 until December 2003, at which time Beal assigned the mortgage to Countrywide, which serviced it from December 2003 until it was paid in full in 2006. From December 2003 into 2006, Countrywide continued to collect and maintain in its escrow account funds to pay the premium on a homeowner's insurance policy for the property at 3000-3002 St. Peter Street.

On August 29, 2005, Hurricane Katrina struck New Orleans causing severe damage to James' property. When James filed a claim on her homeowner's insurance she was informed that her homeowner's policy had lapsed for non-payment in January 2004, and had not been renewed or reinstated. She filed suit against Countrywide in state court on August 8, 2005; Countrywide removed the suit to federal court. After discovery, James filed a Supplemental and Amending Complaint in federal court, adding Beal, Citizens and Oxford as defendants. The suit alleges that Countrywide and Beal are liable to plaintiff for negligence and breach of contract for failure to timely or properly pay for her homeowner's insurance premiums from the escrow payments she made;

---

[3]Citizens is the successor to the Louisiana Joint Reinsurance Plan ("LJRP").

for failure to communicate with her; for failure to warn her to take action to protect her rights; for allowing her homeowner's insurance to lapse and failure to notify her of that lapse; for misrepresenting to her that she had homeowner's insurance in place; for failing to act as reasonable and responsible agents; for charging her for services/items that were never rendered or obtained; for failing to properly advise her; and for breach of contract and negligence; and finally, for violation of the Louisiana Unfair Trade Practices Act ("LUPTA").  James claims damages including the full value of the property damage, loss of use, recoverable depreciation, mold damage remediation, cost of compliance, mental anguish and inconvenience, consequential damages and penalties and attorney's fees where applicable.

## ANALYSIS

A motion for summary judgment is properly granted only if there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L. Ed. 3d 265 (1986).  An issue is material if its resolution could affect the outcome of the action.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  In deciding whether a fact issue has been created, we must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party.  *See*

Olabisiomotosho v. City of Houston, 185 F.3d 521, 525 (5th Cir. 1999).  However, once a moving party properly supports a motion for summary judgment, the nonmoving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial."  Lawrence v. Univ. of Tex. Med. Branch at Galveston, 163 F.3d 309, 311-12 (5th Cir. 1999), *quoting* Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047-48 (5th Cir. 1996).  The nonmoving party cannot satisfy its burden with "unsubstantiated assertions" or "conclusory allegations."  Id.

In their motions for summary judgment, both Beal and Countrywide argue that they are entitled to summary judgment because they owed no contractual, legal or fiduciary duty to plaintiff to procure or maintain James' insurance or to notify her of the status of her insurance; that plaintiff was responsible for the maintenance or renewal of her insurance; that they are not liable for misrepresentation, deception or conversion; that they are not liable under the Louisiana Unfair Trade Practices Act or for plaintiff's emotional distress claims; and finally, that plaintiff's delictual claims have prescribed.  Countrywide also blames Beal for Countrywide's failure to timely pay the premium on plaintiff's hazard insurance, resulting in its cancellation.

The following facts are undisputed:

9-20-1991:    Plaintiff executed a note in the amount of $16,450.00 with an October 2006 maturity date, and

-4-

|  |  |
|---|---|
|  | a mortgage that encumbered the property at 3000-02 St. Peter Street.[4] |
| 10-20-2001: | The mortgage was assigned to Beal Bank.[5] |
| 10-02-2003: | Oxford sent a memo to the insurance carrier, Louisiana Joint Reinsurance Plan ("LJRP"), which at that time listed plaintiff as "payor" on the insurance policy, to "AMEND PAYOR TO BILL MORTGAGEE EFFECTIVE FOR 10/02/03" naming Beal as payor.[6] |
| 11-03-2003: | LJRP mailed a Renewal Declaration to Oxford for the policy period from 01/02/2004 to 01/02/2005 listing Beal Bank as the mortgagee, and the premium due for renewal as $1,010.00. The Renewal Declaration is stamped as received by Oxford on Nov. 10, 2003.[7] |
| 11-03-2003: | Beal transferred the servicing of plaintiff's mortgage to Countrywide.[8] |
| 12-03-2003: | Beal notified Oxford by letter that it had transferred the servicing of plaintiff's mortgage to Countrywide effective November 21, 2003, and that the mortgagee clause on the hazard insurance policy should be changed to reflect Countrywide as mortgagee. The letter is stamped as received by Oxford on 12/08/03.[9] |
| 12-08-2003: | Oxford advised LJRP by memo, regarding "BETTY JONES POLICY # FZD 0257997 01" to "AMEND MORTGAGE CLAUSE TO READ: COUNTRYWIDE HOME LOANS, INC. ... LOAN # 110008654 EFFECTIVE FOR 11/21/03"[10] |

---

[4] Countrywide Memorandum in Support, Ex. A, A-1 and A-2.

[5] Id., Ex. A-3.

[6] Id., Ex. C-18.

[7] Id., Ex. C-21.

[8] Id., Ex. A, ¶ 6, Declaration of Stephen Grzeskowiak, First Vice President of Regional Operations, Countrywide.

[9] Id., Ex. C-22.

[10] Id., Ex. C-23.

01/12/2004:     LJRP mailed to Beal (still listed as payor) and Oxford a notice that the insurance policy would be cancelled for non-payment of the premium as of 02/05/04.  The "Return With Remittance" portion of the notice has a hand written (unidentified) notation to "BILL TO" Countrywide Home Loans with the mailing address and loan number written in.  The notice is stamped as received by Oxford on 01/15/04.  The date "1/29/04" with undecipherable initials is hand written on the notice, along with an unidentified handwritten note dated "2/6/04" stating "Called comp spoke w/John no pymt but only up to the 30th of January for pymts", and a second unidentified handwritten note dated "2/12/04" stating "Called comp spoke w/Nancy cancelled non-payment".[11]

01-16-2004:     LJRP mailed an "Amended Declaration Change Mortgagee" notice, effective 11/21/03, identifying Countrywide as the mortgagee, for the policy period 01/02/2003 to 01/02/2004.  The notice is stamped as received by Oxford on 01/22/04.  On the same date, Oxford received a copy of the Amended Declaration for the policy period 01/02/2004 to 01/02/2005, again identifying Countrywide as mortgagee.[12]

01-29-2004:     Oxford faxed a copy of the cancellation notice for non-payment of plaintiff's hazard insurance dated 01/12/2004 with a hand written note that payment should be sent overnight "directly to Company" as the cancellation date is 2/5/04.[13]  However, the copy of the cancellation notice that was apparently faxed on 1/29/04 (as evident from the fax transmission report) contains the unidentified handwritten notes dated 2/6/04 and 2/12/04.

01-30-2004:     Countrywide changed plaintiff's mortgage account to an escrow impound.[14]

---

[11] Id., Ex. C-24.

[12] Id., Ex. C-25, C-26.

[13] Id., Ex. C-27.

[14] Id., Ex. A-4.

02/01/2004
through
03/02/2004:     Countrywide send a premium payment to LJRP which was returned because LJRP stated that it did not write insurance.  On February 27, 2004, Countrywide sent payment to Oxford, which was received by Oxford on March 2, 2004, and was returned to Countrywide on the same date with a letter explaining that the policy expired on January 2, 2004 and was not renewed.[15]

Countrywide and Beal argue that under the terms of the mortgage, they had no contractual or legal obligation to procure or maintain plaintiff's hazard insurance.  In support of their argument, Beal and Countrywide point to Section 5 of the mortgage[16] that requires the borrower to keep "the Property insured against loss by fire, hazards included within the term 'extended coverage' and any other hazards, including floods or flooding, for which Lender requires insurance."

Plaintiff points out that she does not allege that either had a duty of obtain hazard insurance, and that she actually had hazard insurance on her property beginning in 1991 when she executed the mortgage of her property to secure the note.  She alleges that both Beal and Countrywide had a contractual and legal duty to timely pay the hazard insurance premiums from the escrow account each maintained for that purpose.  In support of

---

[15] Id., Ex. A, ¶¶ 7, 8, Declaration of Stephen Grzeskowiak, First Vice President of Regional Operations, Countrywide; Plaintiff's Opposition to Countrywide's Motion, Exs. 5 and 6.

[16] Id., Ex. A, ¶ 5.

her argument, she also points to the mortgage agreement that includes the following provision at Section 2:

> 2.  Funds for Taxes and Insurance.  Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments ....; (b) yearly leasehold payments or ground rents on the Property, if any; (c) **yearly hazard insurance premiums;** (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, In Lieu of the payment of mortgage insurance premiums.  These items are called "Escrow Items."
> ....
> **Lender shall apply the Funds to pay the Escrow Items.**[17]

Countrywide next argues that plaintiff received by mail from Louisiana Citizens Property Insurance Corp. ("Fair Plan") C/O Audubon Insurance Company, a copy of LJRP's 01/12/04 notice of cancellation of her hazard policy number FZD 0257997 for non-payment of the premium.[18]  Countrywide also produced a copy of an Audubon Insurance Group Certificate of Mailing, mail date 01/13/2004, showing that the notice was mailed to Betty Jones at 3002 St. Peter Street, New Orleans, La., 70119, and a copy of a letter mailed to plaintiff by Oxford, dated February 12, 2004, notifying her that her hazard policy had expired *on January 2, 2003*, for non-payment, and that she should contact Oxford if she

---

[17] James' Opposition, Ex. 7 Copy of Mortgage: UNIFORM COVENANTS, section 2.

[18] Countrywide's Memorandum in Support, Ex. C-34.

was interested in coverage.[19]  It argues that having received such notice, it was her responsibility, not Countrywide's, to reinstate her policy or purchase a new policy, and that her delictual claims against it have prescribed.

In her affidavit, plaintiff declared that "[a]t no time prior to Hurricane Katrina did Countrywide or anyone else advise [her] that they were not paying her homeowner's insurance, or that her insurance was cancelled."[20]  She also declared that at all times since she entered into the mortgage, all mortgage companies including Countrywide were responsible for payments for her homeowner's insurance, and collected and escrowed funds for her flood and homeowner's insurance and her taxes.  She further declared that Countrywide continued to collect for all of her insurance and taxes and continued to inform her that it was paying her homeowner's insurance premiums until after Hurricane Katrina.  She provided a copy of a Statement from Countrywide, dated 02/09/06, in which Countrywide states that it is "responsible for payment of the following escrow items: .... Homeowner's insurance ... Flood insurance ...  City taxes ...."[21]

There is a genuine issue of material fact as to whether Beal and/or Countrywide owed a contractual and/or legal duty to

---

[19] Id., Ex. C-36, C-28.

[20] James' Opposition, Ex. 1, Affidavit.

[21] Id., Exs. 1, 2 and 3.

plaintiff to timely pay the insurance premiums in order to maintain her existing hazard insurance policy, and whether either or both are liable for misrepresentation, deception or conversion, or for plaintiff's emotional distress claim, and whether plaintiff's delictual claims have prescribed.

Plaintiff concedes that she does not have a claim against Beal or Countrywide for liability under the Louisiana Unfair Trade Practices Act.

Accordingly,

**IT IS ORDERED** that defendant Countrywide's motion for summary judgment, record document #60, and defendant Beal's motion for summary judgment, record document #62, are **GRANTED** as to plaintiff's claim for liability under the Louisiana Unfair Trade Practices Act; and

**IT IS FURTHER ORDERED** that defendant Countrywide's motion for summary judgment, record document #60, and defendant Beal's motion for summary judgment, record document #62, are **DENIED** in all other respects.

New Orleans, Louisiana, December 3, 2008.

**MARCEL LIVAUDAIS, JR.**
Senior United States District Judge